18315. WOODARD *et al. v.* COLLIER *et al.*

ARGUED SEPTEMBER 16, 1953—DECIDED OCTOBER 13, 1953—
REHEARING DENIED NOVEMBER 12, 1953.

*Bates Block,* for plaintiffs in error.

*Poole, Pearce & Hall, Warren E. Hall, Jr., Fred W. Elarbee Jr., W. D. Lanier, Edwin Pearce,* contra.

WYATT, Justice. Since we are here reviewing the judgment of the trial court refusing a temporary injunction, we will deal only with the undisputed facts. These facts were in substance as follows: The employees of Tanner were not members of a labor union. On March 17, 1953, E. W. Collier, Business Manager of Local Union No. 613 of the International Brotherhood of Electrical Workers, and William A. Cetti, President of the Atlanta Building and Construction Trades Council, met with Tanner and his employees in his office and discussed fully the question of the employees' becoming members of the electrical workers union. The representatives of the union were given full opportunity to discuss the matter with the employees, and were in no way interfered with by the employer. The employees did not become members of the union, and did not desire to become members of the union. They were satisfied with the terms and conditions of their employment, and there was no dispute as between the employer and his employees. On April 24, 1953, Tanner had a sub-contract to do the electrical work on a building. E. W. Collier went to the job and found working there employees of Tanner, including Ira W. Woodard, who were not members of the union. He placed pickets on the job. There were only two pickets, and there was no violence. The workers on the job were both union and non-union, the job being an open job. When the pickets were placed on the job, the unions with members on the job were notified. The members of the different unions were then taken off the job, and they refused to cross the picket line. The employees of Tanner then left the job. Thereupon, the union workers went back to work. The work was so integrated that no electrical work could proceed unless the work being done by the union members also proceeded. E. W. Collier, after testifying that he would keep pickets on the job so

long as employees of Tanner worked on the job, testified, "I would remove those pickets if the employees of Tanner Electric Company joined the union."

It follows from these undisputed facts that the pickets were placed on this job for the sole purpose of forcing the employees of Tanner Electric Company either to join the union or to quit work. This action was successful in forcing the employees of Tanner to cease working on the job. The further apparent purpose was to force Tanner to employ only union labor, or be unable to comply with the terms of his contract. The question presented is whether or not this action on the part of the defendants in error is permissible under the laws of Georgia.

This presents the troublesome problem of the conflicting interests of employers to carry on their business free from interference; the right of employees to join or not to join a labor union; and the right of labor unions to raise the standards of labor by unionization. The proper balance of these conflicting interests properly belongs to the legislative department of government. In Georgia the legislature has dealt with the question in the following language: "It shall be unlawful for any person, acting alone or in concert with one or more other persons to compel or attempt to compel any person to join or refrain from joining any labor organization, or to strike or refrain from striking against his will, by any threatened or actual interference with his person, immediate family, or physical property, or by any threatened or actual interference with the pursuit of lawful employment by such person, or by his immediate family." Code (Ann. Supp.) § 54-804. "Any person or persons, who, by threats, violence, intimidation, or other unlawful means, shall prevent or attempt to prevent any person or persons from engaging in, remaining in, or performing the business, labor, or duties of any lawful employment or occupation, shall be guilty of a misdemeanor." Code § 66-9906.

The actions complained of in the instant case are clearly a violation of the above quoted Code sections. The courts of this country have dealt often with this question, and we find many conflicting opinions by the courts of the different States. Likewise, all of the decisions of the Supreme Court of the United States on this question are not entirely in harmony. It would

serve no useful purpose to set forth here the many decisions on the question. It seems now to be rather well settled that the right to peacefully picket can not be interfered with by the courts unless the picketing is for an unlawful purpose. If it is for an unlawful purpose, it can and should be enjoined. Clearly, the legislature of this State has made picketing under the admitted facts of this case unlawful.

In Building Service Employees International Union Local.No. 262 *v.* Gazzam, 339 U. S. 532 (70 Sup. Ct. 784, 94 L. ed. 1045), the Supreme Court of the United States in considering a statute of the State of Washington very similar to the Georgia statute said (at p. 537): "The public policy of any State is to be found in its constitution, acts of the legislature, and decisions of its courts. 'Primarily it is for the lawmakers to determine the public policy of the state.' [Citations.]

"The State of Washington has by legislative enactment declared its public policy on the subject of organization of workers for bargaining purposes. The pertinent part of this statute is set forth in the margin. The meaning and effect of this declaration of policy is found in its application by the highest court of the State to the concrete facts of the instant case. Under the so-enunciated public policy of Washington, it is clear that workers shall be free to join or not to join a union, and that they shall be free from the coercion, interference, or restraint of employers of labor in the designation of their representatives for collective bargaining. Picketing of an employer to compel him to coerce his employees' choice of a bargaining representative is an attempt to induce a transgression of this policy, and the State here restrained the advocates of such transgression from further action with like aim. To judge the wisdom of such policy is not for us; ours is but to determine whether a restraint of picketing in reliance on the policy is an unwarranted encroachment upon the rights protected from state abridgment by the Fourteenth Amendment." The grant of the injunction was affirmed.

Since the undisputed facts of the instant case show a clear violation of the statute law of this State, and the picketing in question to be for an unlawful purpose, the facts demanded the grant of the injunction as prayed. It follows, the judgment of the court below must be reversed.

*Judgment reversed. All the Justices concur.*