SYDNEY J. WOOD, Doing Business under the Name of 53RD STREET SUBWAY LIQUOR STORE, Respondent, v. JOHN M. O'GRADY, Individually and as President of Wine and Liquor Store Employees Union, Local 122, A. F. of L., et al., Appellants.

Argued April 14, 1954; decided October 22, 1954.

*Jacob Friedberg* for appellants. I. Picketing conducted in a lawful manner, for a lawful objective, will not be enjoined. (*Exchange Bakery & Restaurant* v. *Rifkin,* 245 N. Y. 260; *Nann* v. *Raimist,* 255 N. Y. 307; *Stillwell Theatre* v. *Kaplan,* 259 N. Y. 405; *Carl Ahlers, Inc.,* v. *Papa,* 272 App. Div. 905; *May's Furs & Ready-to-Wear* v. *Bauer,* 282 N. Y. 331; *La Manna* v. *O'Grady,* 278 App. Div. 77; *Thornhill* v. *Alabama,* 310 U. S. 88; *Drivers Union* v. *Meadowmoor Co.,* 312 U. S. 287; *A. F. of L.* v. *Swing,* 312 U. S. 321; *Carpenters Union* v. *Ritter's Cafe,* 315 U. S. 722; *Bakery Drivers Local* v. *Wohl,* 315 U. S. 769.) II. A "labor dispute" within the provision of section 876-a of the Civil Practice Act exists upon the facts herein. (*Florsheim Shoe Store Co.* v. *Retail Shoe Salesmen's Union,* 288 N. Y. 188.) III. The constitutional right of a union to picket is not lost because of an isolated incident of abuse. (*Nann* v. *Raimist,* 255 N. Y. 307; *Wise Shoe Co.* v. *Lowenthal,* 266 N. Y. 264; *J. H. & S. Theatres* v. *Fay,* 260 N. Y. 315; *Apex Hosiery Co.* v. *Leader,* 310 U. S. 469; *Reynolds* v. *Everett,* 144 N. Y. 189; *Sachs Quality Furniture* v. *Hensley,* 269 App. Div. 264.)

*Wilbur Daniels* and *Morris P. Glushien* for New York State Federation of Labor, *amicus curiæ,* in support of appellants' position. I. The industrial controversy here is a "labor dispute" as defined by section 876-a of the Civil Practice Act. Since the plaintiff did not comply with the requirements of section 876-a of the Civil Practice Act, the injunction below was improperly granted. (*May's Furs & Ready-to-Wear* v. *Bauer,* 282 N. Y. 331, 282 N. Y. 804; *Drivers' Union* v. *Lake Valley Co.,* 311 U. S. 91; *Metropolis Country Club* v. *Lewis,* 202 Misc. 624, 280 App. Div. 816; *Lauf* v. *E. G. Shinner & Co.,* 303 U. S. 323; *New Negro Alliance* v. *Grocery Co.,* 303 U. S. 552; *Duplex Co.* v. *Deering,* 254 U. S. 443; *American Foundries* v. *Tri-City Council,* 257 U. S. 184; *United States* v. *Hutcheson,* 312 U. S. 219; *Hunt* v. *Crumboch,* 325 U. S. 821.) II. If a lawful labor objective is a requisite for a "labor dispute" under section 876-a of the Civil Practice Act, the peaceful picketing for organizational and publicity purposes under the circumstances of this case was for a lawful labor objective. (*Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348; *American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226; *Jewelry Co.* v. *United Retail Employees' Union,* 281 N. Y. 150;

*Florsheim Shoe Store Co.* v. *Shoe Salesmen's Union,* 288 N. Y. 188; *Dinny & Robbins* v. *Davis,* 290 N. Y. 101; *Baillis* v. *Fuchs,* 258 App. Div. 919, 283 N. Y. 133; *Edjomac Amusement Corp.* v. *Empire State Motion Picture Operators' Union,* 273 N. Y. 647; *National Labor Relations Bd.* v. *Federbush Co.,* 121 F. 2d 954.) III. Peaceful picketing for organizational and publicity purposes is protected by the Constitutions of the United States and of New York State. (*Thornhill* v. *Alabama,* 310 U. S. 88; *Carlson* v. *California,* 310 U. S. 106; *Senn* v. *Tile Layers Union,* 301 U. S. 468; *Drivers Union* v. *Meadowmoor Co.,* 312 U. S. 287; *Building Service Union* v. *Gazzam,* 339 U. S. 532; *Plumbers Union* v. *Graham,* 345 U. S. 192; *Teamsters Union* v. *Hanke,* 339 U. S. 470; *Hughes* v. *Superior Court,* 339 U. S. 460; *Giboney* v. *Empire Stor. Co.,* 336 U. S. 490; *Cafeteria Union* v. *Angelos,* 320 U. S. 293; *Hotel Employees' Local* v. *Board,* 315 U. S. 437.)

*Julius Kass, Maurice H. Goetz, Martin P. Dillon* and *Clifford D. Reznicek* for respondent. I. The union's picketing of plaintiff's store and its collateral actions at other establishments in support thereof should be enjoined: because its activities during the past two years have overrun the boundaries of organizational picketing; and because its activities reflect the union's intent and object to coerce plaintiff, by means of economic pressure, into committing an illegal act. (*Goodwin's, Inc.,* v. *Hagedorn,* 303 N. Y. 300; *Way Baking Co.* v. *Teamsters & Truck Drivers Local 164, A. F. of L.,* 335 Mich. 478, 345 U. S. 957; *Building Service Union* v. *Gazzam,* 339 U. S. 532; *Metropolis Country Club* v. *Lewis,* 202 Misc. 624, 280 App. Div. 816; *Haber & Fink* v. " *Jones* ", 277 App. Div. 176.) II. Picketing is merely a phase of communication and not the constitutional equivalent of free speech. Therefore, if it has an illegal purpose, it can be enjoined. (*Thornhill* v. *Alabama,* 310 U. S. 88; *A. F. of L.* v. *Swing,* 312 U. S. 321; *Drivers Union* v. *Meadowmoor Co.,* 312 U. S. 287; *Bakery Drivers Local* v. *Wohl,* 315 U. S. 769; *Carpenters Union* v. *Ritter's Cafe,* 315 U. S. 722; *Giboney* v. *Empire Stor. Co.,* 336 U. S. 490; *Hughes* v. *Superior Court,* 339 U. S. 460; *Teamsters Union* v. *Hanke,* 339 U. S. 470; *Building Service Union* v. *Gazzam,* 339 U. S. 532; *Plumbers Union* v. *Graham,* 345 U. S. 192.) III. There is no labor dispute involved in this case. (*Bond Stores* v. *Turner,* 258 App. Div. 769.)

DYE, J. In this appeal we deal with the propriety of an injunction issued by the court below to restrain peaceful organizational picketing because such picketing included " an unlawful objective  *  *  *  by exerting economic pressure ".

Section 876-a of the Civil Practice Act (L. 1935, ch. 477) declares, as a matter of State policy, that injunctions may not issue " in any case involving or growing out of a labor dispute " except after a hearing and after a finding of fact in the language of the statute that " unlawful acts have been  *  *  *  threatened or committed " which " will be executed or continued unless restrained " (subd. 1, par. [a]) causing " substantial and irreparable injury to complainant's property " (subd. 1, par. [b]). Even then, the restraint must not interfere with certain recognized rights, particularly the publication of the facts in any dispute by picketing not involving " fraud, violence or breach of the peace " (subd. 1, par. [f], cl. [5]). The Legislature, in carefully chosen language, defined a labor dispute as one between " persons who are engaged in the same industry, trade, craft or occupation " (subd. 10, pars. [a], [b]) which " includes any controversy concerning terms and conditions of employment  *  *  *  or representation  *  *  *  or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee " (subd. 10, par. [c]).

The labor policy thus embedded in our statutory law stated nothing new or revolutionary. Over a long period of years this court has painstakingly evolved a pattern of decisional law repudiating the use of an injunction to restrain peaceful picketing in labor disputes which is too well known to warrant repeating here (*National Protective Assn.* v. *Cumming*, 170 N. Y. 315; *Interborough R. T. Co.* v. *Lavin*, 247 N. Y. 65, 74; *Stillwell Theatre, Inc.*, v. *Kaplan*, 259 N. Y. 405; *J. H. & S. Theatres, Inc.*, v. *Fay*, 260 N. Y. 315; *Nann* v. *Raimist*, 255 N. Y. 307; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260).

In such a setting, it naturally followed that when the constitutionality of section 876-a was challenged, it would be upheld (*Goldfinger* v. *Feintuch*, 276 N. Y. 281) and that it would be applied, even though the disputants do not stand in relation of employer and employee (*May's Furs & Ready-to-Wear, Inc.*, v.

*Bauer,* 282 N. Y. 331), and that if the acts of the unions "have any reasonable connection with wages, hours of employment, health, safety, the right of collective bargaining, or any other condition of employment or for the protection from labor abuses, then the acts are justified" (*Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348, 355).

The long history of controversial labor relations in this State is replete with instances of inconvenience to the employer, but it does not follow that at this late date such a consequence without more can be labeled "an unlawful objective".

As we view this record, the incidents complained of do not constitute an unlawful objective but at most amount to no more than the consequences frequently accompanying peaceful picketing in a labor dispute.

Briefly stated, the evidence establishes the plaintiff as the sole licensee and proprietor of a retail liquor store doing business under the name and style of 53rd Street Subway Liquor Store located at 135 East 53rd Street, New York City; that he employs, among others, three sales clerks. The defendant, Wine and Liquor Store Employees Union, Local 122, is an affiliate of the American Federation of Labor and represents, as bargaining agent, wine and liquor store clerks in New York City. For convenience, the plaintiff and defendant will hereinafter be referred to as "employer" and "union" respectively.

Beginning in October, 1951, the union undertook a campaign to enlist nonunion liquor store clerks into its membership which, we may assume, was preparatory to representing them as bargaining agent in negotiating with employers for employment contracts. Preliminary to commencement of solicitation, union representatives went to the employer, as was their custom, and advised him of the proposed organization campaign and their intention to solicit his sales clerks to join their union. They did not at that time or any other time present him with a collective contract or demand that he sign such a contract with them. The employer not only rejected the proposal for a union shop, but stated affirmatively that he was not interested in the union and if any of his workers signed up to join "they are not going to work in this store" and "he would put them out on the street with you". Under all the circumstances, it is clear that a statutory labor dispute is present here.

Picketing commenced October 20, 1951, the picket line consisting of one or two pickets stationed in front of the employer's store and carrying a placard bearing the legend: " The employees of this store are non-union. Please do not patronize this non-union store. We are members of the American Federation of Labor, Local 122 of A. F. L." The truthfulness of this legend is not challenged. The record is barren of any instance of violence or disorder on the part of the pickets but does contain testimony that the employer frequently indulged in loud and abusive talk reflecting on the integrity of the union and the individual pickets; that he broomed the sidewalk in such a way as to scatter the sweepings around the feet of the pickets and, with an upward gesture toward the pickets, was heard to say in a loud voice to be overheard by persons in the vicinity, " I have to get rid of this filth ". There is other evidence not denied by Wood that the employees were coerced with threats of dismissal into not joining the union. None of the workers joined, although one at least indicated a favorable attitude but refrained, due to the fear of dismissal.

Implicit in the decision at Special Term is the finding that by such comment and attitude the employer attempted " directly or indirectly, to interfere with, restrain or coerce employees in the exercise of [their] rights " (Labor Law, §§ 703–704), which, under all the circumstances of this case was enough to warrant that court in denying an injunction.

To justify the contention that the picketing was in fact directed against him, the employer adduced testimony to show that wholesale deliveries of merchandise to his store were cut off because their truck drivers refused to cross the picket line with the result that the employer had to get his merchandise from the wholesaler or warehouse himself which, in any view, amounts to no more than personal inconvenience, for it was readily admitted that at all times the shelves of his store were " loaded ". Furthermore, no proof was offered showing that the employer's customers were in any way or at any time intimidated, molested or interfered with, nor did the employer attempt to prove any loss of patronage or business profits. Such showing fails to establish the " substantial and irreparable injury to complainant's property " essential to justify the issuance of an injunction (Civ. Prac. Act, § 876-a, subd. 1, par. [b]; *Florsheim Shoe*

*Store Co.* v. *Retail Shoe Salesmen's Union,* 288 N. Y. 188; *Busch Jewelry Co.* v. *United Retail Employees' Union,* 281 N. Y. 150; *Remington Rand, Inc.,* v. *Crofoot,* 279 N. Y. 635).

It should be mentioned that for a few days during March, 1953, the union picketed the Reilly Storage Warehouse Company located at 149th Street and Third Avenue where liquor consigned to the employer was stored. When the pickets were withdrawn, for a short time at least, lookouts were posted, but all such activities were voluntarily discontinued long before commencement of the within suit. Nothing was shown to indicate that the union intended to resume picketing at the warehouse in the future. This affords no evidentiary basis for restraining by injunctive means the picketing being peacefully conducted in front of the employer's retail store (cf. *Dinny & Robbins, Inc.,* v. *Davis,* 290 N. Y. 101; *May's Furs & Ready-to-Wear, Inc.,* v. *Bauer,* 282 N. Y. 331, *supra*).

Prior to the commencement of the within suit and on or about October 30, 1951, the employer filed a petition with the New York State Labor Relations Board (State Labor Relations Act [Labor Law, art. 20], § 705) seeking an election to determine whether the union was an authorized bargaining agent. After a hearing, the petition was dismissed for the reason that (1) the union had not claimed to and did not represent the workers and had never demanded of or submitted a collective contract to the employer (cf. *Matter of Lombardi* v. *Cooks, Countermen, Soda Dispensers & Assistants Union,* 14 S. L. R. B. No. 100; *Matter of Minsang Wet Wash Co.,* 14 S. L. R. B. No. 130), and (2) that the union was merely engaged in an organizational activity (*Matter of Wood* v. *Wine & Liq. Store Employees Union,* 15 S. L. R. B. No. 23, Case No. SEE-20870). Following such dismissal, the employer commenced an action for injunctive relief to restrain the picketing altogether. This too resulted in a dismissal (*Wood* v. *O'Grady,* N. Y. L. J., April 28, 1952, p. 1682, col. 2).

The Special Term, in dismissing the within complaint on the merits, made findings of fact to support its conclusion that the union's picketing in front of plaintiff's store was peaceful and unaccompanied by violence and was for a lawful purpose, namely, " for the purpose of organizing the employees of the plaintiff's store, and to call the public's attention to the fact that the plaintiff's is a non-union store, and to ask the public to

patronize union stores ''. The Special Term pointed out that, '' Assuming that a labor dispute is not involved and that therefore the complaint is not required to comply with the provisions of section 876-a of the Civil Practice Act, plaintiff nevertheless has failed to establish that he is entitled to an injunction restraining peaceful picketing.''

Upon appeal to the Appellate Division, First Judicial Department, that court unanimously reversed, making new findings to support its conclusion of law that the picketing complained of is '' for an unlawful objective in that it seeks to coerce the employer into signing a contract with Respondent union by exerting economic pressure against the employer to force him to violate the State Labor Relations Act by compelling the employees to join Respondent union against their will or, in the alternative, to drive plaintiff out of business '' which it deemed violative of sections 703–704 of the Labor Law in that it was forcing the employer to contract '' with a union that does not represent any of his employees ''. (*Wood* v. *O'Grady,* 283 App. Div. 83, 85.) Such findings and conclusions are contrary to the overwhelming weight of the evidence. As we have already said, the evidence convincingly establishes that at no time did the union claim to this employer or to any one else for that matter — that it collectively represented his workers and at no time did it demand a collective contract for the very good reason that none of his employees had joined their union and none were members at that time. Notwithstanding that state of the record, the Appellate Division nonetheless cited as authority *Goodwins, Inc.,* v. *Hagedorn* (303 N. Y. 300); *Metropolis Country Club* v. *Lewis* (202 Misc. 624, affd. 280 App. Div. 816); *Haber & Fink* v. '' *Jones* '' (277 App. Div. 176); *Plastic Calendering Corp.* v. *Spilberg* (121 N. Y. S. 2d 297, 304).

An examination of those cases discloses their inapplicability to the present situation. In *Goodwins* (*supra*), for instance, we were not dealing with peaceful picketing for purposes of organization (cf. *May's Furs & Ready-to-Wear, Inc.,* v. *Bauer,* 282 N. Y. 331, *supra; Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260, *supra*), but rather with picketing to compel employer recognition as collective bargaining agent of its workers, despite the fact that a certification proceeding on that very issue was pending before the National Labor Relations Board to deter-

mine whether the picketing union or a rival union should be certified, a quite different situation.

*Metropolis* (*supra*) involved untruthful representation while in *Haber & Fink* (*supra*) there was violence in an attempt to nullify an election resulting in a vote of " no union ". In *Plastic Calendering Corp.* v. *Spilberg* (*supra*), it was conceded by both sides that the purpose of the picketing was to obtain recognition of a local union as the employees' collective bargaining agent without certification by the National Labor Relations Board. However, there is nothing in that group of cases or the statute authorizing the use of an injunction in peaceful picketing for avowedly organizational purposes. It is only when the picketing is unlawful that it may properly be restrained (cf. *Building Service Union* v. *Gazzam*, 339 U. S. 532; *Plumbers Union* v. *Graham*, 345 U. S. 192; *Goodwins, Inc.,* v. *Hagedorn, supra*). It is axiomatic that we may not, under the guise of interpretation, import into a statute conditions or criteria which the Legislature has been careful to omit. By the same token, we may not review a record in such a way as to bypass the clear meaning and intent of the Legislature. If the Legislature wishes to sound the death knell of peaceful organizational picketing by repealing section 876-a as a declaration of State policy, or by amending it, so as to permit the restraint of peaceful organizational picketing as unlawful because " exerting economic pressure " in addition to that presently defined as " substantial and irreparable injury to complainant's property " it, of course, may do so but we may not.

In the court below much stress was laid on the length of time the within picketing had continued without success, as being in the nature of unlawful economic coercion. The test of illegality, as we see it, is not whether any particular picketing has " gone on long enough " but rather whether such picketing is being lawfully conducted in the furtherance of union interests in a statutory labor dispute. If picketing is a legally protected right one day, it continues as such into the next. Section 876-a prescribes no time limit.

The judgment of the Appellate Division should be reversed and that of Special Term reinstated, with costs in this court and in the Appellate Division.

DESMOND, J. (concurring). I join in Judge DYE's opinion and agree for reversal and dismissal of the complaint, but I add (or restate) some reasons therefor.

Since the picketing (even though "organizational" only) at plaintiff's place of business was peaceful and since the picketing signs spoke the truth, there could not, constitutionally (*Thornhill* v. *Alabama,* 310 U. S. 88; *A. F. of L.* v. *Swing,* 312 U. S. 321; *Stillwell Theatre, Inc.,* v. *Kaplan,* 259 N. Y. 405), be an injunction here unless there was, at the least, proof and valid finding of an "unlawful labor objective" (*Goodwins, Inc.,* v. *Hagedorn,* 303 N. Y. 300, 305). The illegal purpose of this picketing, so the Appellate Division found, was to coerce the employer to act in violation of sections 703 and 704 of our State Labor Law by insisting that his employees join the union. That finding was based on another finding that none of appellant's employees had "yielded to union membership despite almost two years of exhortation and enticement and despite the fact that the picket line has been maintained outside of Appellant's store during all this time". Let us assume that the continuance of the picketing after and despite the failure of the clerks to join the union, would be, without more, adequate proof that the real purpose of the union was to compel plaintiff to violate the State Labor Relations Act (Labor Law, art. 20). But this record contains testimony, undisputed although not the subject of any finding below, which shows that the employees were actually coerced by the employer *not* to join the union. Thus, this record establishes that the picketing was in aid of the constitutional and statutory right of these clerks to make their own unimpeded choice as to whether or not to be organized.

This record, in another respect, lacks adequate support for the injunction. Under section 876-a of the Civil Practice Act, and by the general rules of equity (*Kane* v. *Walsh,* 295 N. Y. 198, 205, 206), an injunction may be granted only on a showing that there will, otherwise, be irreparable injury. I see no proof of any substantial injury of any kind to plaintiff from the picketing of the store (the picketing of the warehouse continued for a few days only and ended long before the trial). There is no showing of any falling off in patronage, or any shortage of merchandise.

FULD, J. (concurring). In an endeavor to pinpoint my vote for reversal, I add these few words of my own.

Broad as is the concept of a " labor dispute," it is now settled (1) that section 876-a of the Civil Practice Act would not be applicable if the picketing sought to be enjoined were designed to further an " unlawful labor objective " (see, e.g., *Goodwins, Inc., v. Hagedorn,* 303 N. Y. 300, 305) and (2) that the right of free speech, as guaranteed by the Fourteenth Amendment, would not protect even peaceful picketing if its objective were unlawful. (See, e.g., *Plumbers Union v. Graham,* 345 U. S. 192, 201; *Building Service Union v. Gazzam,* 339 U. S. 532; *Teamsters Union v. Hanke,* 339 U. S. 470.) Accordingly, if in this case the picketing had been directed only against the employer, to induce him to recognize the union, if, in other words, defendant's actual purpose in carrying on that picketing had been, not to organize the employees, but to bring pressure to bear upon the employer to compel his employees to join the union, I would favor an affirmance and the issuance of an injunction.

The record before us, however, fails to establish that the picketing was for that illegal objective. The weight of the evidence strongly supports the conclusion, reached by the trial court, that the picketing was for organizational purposes, to persuade the employees to become members of the union. Such an objective has long been deemed lawful and legitimate in this state (Civ. Prac. Act, § 876-a, subd. 10, par. [c], L. 1935, ch. 477; see *Exchange Bakery & Restaurant, Inc., v. Rifkin,* 245 N. Y. 260; *May's Furs & Ready-to-Wear, Inc., v. Bauer,* 282 N. Y. 331, 337–341), and, if there is to be a change, it is for the legislature to effect it.

VAN VOORHIS, J. (dissenting). The facts have been stated in the unanimous opinion of the Appellate Division, First Department, which, in our view, correctly concluded that the picketing of plaintiff's premises has been for an unlawful objective and should be enjoined. Petitioner is the licensee of a package liquor store at 135 East 53rd Street, New York City. He employed three sales clerks, who constituted his entire labor force when this controversy arose, except for two part-time employees who worked on his books and a man who assisted him with trucking. In October, 1951, defendant union sought to

organize plaintiff's three sales clerks. When these employees declined to join the union, picketing began and continued for two years until an injunction was issued by the Appellate Division in December, 1953. There is no labor dispute here in the understood sense of the term. Section 876-a of the Civil Practice Act consequently does not apply. It was correctly said by the Appellate Division in this case (283 App. Div. 83, 85): '' Plaintiff has never been presented with any grievances as to wages, hours or working conditions by his employees. The union has never made any claim of representing any of plaintiff's employees. From this record, it is abundantly clear that plaintiff's employees are unwilling to be represented by defendant union. Up to the time of the trial, the ' organizational ' activities of the union had continued for a period of well over a year and a half, but had been wholly unsuccessful. Such activities are still continuing with no apparent success.'' Although unsuccessful in getting any of these few employees to join, this union has attempted to overpower this small employer by using its much greater resources to drive away his patronage, to prevent deliveries to his store by any of the regular suppliers and to cut him off from the use of any of the liquor warehouses, making every possible endeavor to drive him out of business. '' As a result of these activities,'' the Appellate Division has said, '' plaintiff is faced with the alternative of either going out of business or contracting with a union that does not represent any of his employees, the latter course being in violation of section 17 of article I of the New York State Constitution and sections 703 and 704 of the New York State Labor Law.'' (283 App. Div. 85.) Thus it appears that there is nothing which plaintiff can do to save his business by satisfying the demands of this union, except to violate the Labor Law by compelling his employees to sign up with a union which they do not want to join. There are no findings either by the trial court or by the Appellate Division that this employer has been guilty of the unfair labor practices ascribed to him, which plaintiff denies, and if he had been guilty of them, complaints would certainly have been made by the union to the State Labor Relations Board. Yet no such charges have been lodged against him by the union during the three years which have elapsed since these incidents are said to have occurred. The injunction granted by the unani-

mous Appellate Division is in accord with the great preponderance of judicial authority, both in this State and elsewhere, as appears from the cases hereafter cited.

Appellant's contention cannot be sustained that the Supreme Court may not exercise its equitable powers where picketing is conducted for an illegal purpose (*Goodwins, Inc.*, v. *Hagedorn*, 303 N. Y. 300; *American Guild of Musical Artists* v. *Petrillo*, 286 N. Y. 226, 231; *Building Service Union* v. *Gazzam*, 339 U. S. 532). Appellant next contends that, in any event, this was organizational picketing conducted for a lawful purpose. There are numerous decisions under the law as it existed prior to the National and State Labor Relations Acts, sustaining the right to engage in peaceful organizational picketing, e.g., *Nann* v. *Raimist* (255 N. Y. 307, 319); *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin* (245 N. Y. 260); *May's Furs & Ready-to-Wear, Inc.*, v. *Bauer* (282 N. Y. 331). But an important object of the Labor Relations Acts was to mitigate the sharpness of labor warfare. Before union organization and representation became protected by these statutes, it was legitimate practice for a union to bring the employer to his knees by exerting economic pressure upon him to force his employees to join a union and to contract with the union in their behalf. The right of a union to do this was upheld as helping to counteract weapons in the employer's arsenal, such as the lockout and the yellow dog contract (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin, supra*, p. 269). The *Exchange Bakery* case has been superseded by the Labor Relations Acts in important respects. Thus the saying in that opinion (p. 264) is no longer true that organizational picketing tends to balance the employer's power to "hire and discharge men when and where he chooses and for any reason. * * * If believed to be for their interests employers may agree to employ non-union men only." That is as out of date as the next statement in *Exchange Bakery* that if employees "subsequently joined the union they might have been discharged" (p. 269). Although appellant union would be the first to agree that this part of the *Exchange Bakery* case is no longer law, the same case is pressed on our attention as present day authority in support of the unrestricted right to engage in organizational picketing and boycott. The circumstance must be faced that in both respects the rulings in *Exchange Bakery & Restaurant, Inc.*,

v. *Rifkin* and similar cases have been changed by the Labor Relations Acts.

There is no dispute that respondent conducts an intrastate business, and that the New York State Constitution and the Labor Relations Act apply. These enactments established that " Employees shall have the right to organize and to bargain collectively through representatives of their own choosing." (N. Y. Const., art. I, § 17.) The employer can no longer coerce his employees to join a company union, or to select one independent union in preference to another, or compel them to choose between joining a union and being nonunion. Neither the State Constitution nor Labor Relations Act distinguishes in this respect between organizational activity and collective bargaining. Section 703 of the State Labor Relations Act (Labor Law, art. 20) requires that: " Employees shall have the right of *self-organization, to form, join,* or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, *free from interference, restraint, or coercion of employers,* but nothing contained in this article shall be interpreted to prohibit employees from exercising the right to confer with their employer at any time, *provided that during such conference there is no attempt by the employer, directly or indirectly, to interfere with, restrain or coerce employees in the exercise of the rights guaranteed by this section.*" (Italics supplied.)

Subdivision 3 of section 704 makes it an unfair labor practice for an employer:

" To dominate or interfere with *the formation,* existence, or administration of any employee organization or association, agency or plan which exists in whole or in part for the purpose of dealing with employers concerning terms or conditions of employment, labor disputes or grievances  *  *  *

" (b) *by urging the employees to join any such employee organization or association, agency or plan for the purpose of encouraging membership in the same* " (italics supplied).

It has recently been held that this legislation renders picketing unlawful for the purpose of forcing an employer to recognize a union as collective bargaining agent (*Goodwins, Inc.,* v. *Hagedorn,* 303 N. Y. 300, *supra*). The same principle applies where

the choice to be made by the employees is between union and nonunion status as where it is between rival unions (*Buildings Service Union* v. *Gazzam*, 339 U. S. 532, *supra*). A distinction is asserted by appellants between the *Goodwins* case and a situation like the present where the union is not in position to demand a labor contract for the reason that it represents none of the employees. The State Labor Relations Board, by a divided vote, denied the employer's petition to conduct an election in this case, upon the ground that the case does not involve representational but organizational activity.

A simple analysis of the question shows that the distinction is without substance in this action. In the first place, on the basis of sufficient evidence, the Appellate Division has found that the objective of this picketing is both to force the employer to compel these employees to join the union and to coerce the employer to sign a contract; and, second, the Constitution and statute leave no room for a distinction between interference by the employer in organizational and representational activity by the union. As the text shows in the italicized portions that have been quoted, an employer is forbidden to coerce his employees to join a particular union just as definitely as he is forbidden to yield to coercion in recognizing a union as the exclusive bargaining agent for his employees unless they have selected it. The language of the statute forbids such a conclusion. "Picketing for organizational purposes is only fictionally different from picketing for immediate recognition. The same kind of pressure on both employer and employees exists in either case; furthermore, the union is trying to force the employer to coerce his employees in either case; and finally, the union's basic desire — the desire for exclusive bargaining status — is the same in either case. The only difference relates not to the conduct of the union, or its effects, but to the union's explanation of its conduct." (Petro, Recognition of Picketing Under the NLRA, C. C. H., Labor L. J., Nov., 1951, pp. 803, 805.)

The object is equally unlawful whether the employer seeks to compel union affiliation of his employees or their representation by the union after they have joined. The only object in organizing a union is to enable the union to act as collective bargaining agent. Indeed, appellant union appears at the trial

to have abandoned this distinction when one of its business agents testified:

" Q. Do you expect Mr. Wood to suggest to his men that they join the union? A. No.

" Q. You know that would be against the law, is that right? A. That I would know.

" Q. And you also know it would be against the law for Mr. Wood to sign a contract with your union when his employees have not selected your union as their bargaining agent; you know that? A. That is true; that is right.

" Q. So despite the fact that you know those two things, you are still picketing Mr. Wood's store? A. That is true."

Evidently realizing that no legal basis exists for boycotting the employer under these circumstances, appellants take the position that the union in this instance is picketing not the employer but his employees. If that were true, the signs carried by the pickets would not have read " Please do not patronize this non-union store." The store is not owned by the employees; the attempt to destroy the patronage is aimed at the employer who can only continue in business if he has the patronage of his customers. As the United States Supreme Court has recognized, industrial picketing " ' is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' " (*Hughes* v. *Superior Court of California,* 339 U. S. 460, 464-465, per FRANKFURTER, J., quoting from DOUGLAS, J., in *Bakery & Pastry Drivers & Helpers Local* v. *Wohl,* 315 U. S. 769, 776).

As the Trial Justice herein took judicial notice, the mere presence of a picket line stops many people from crossing it, regardless of the merits of the controversy or the legality of the objective. In this instance, it prevented and was intended to prevent delivery of merchandise at plaintiff's place of business by all of his suppliers, as well as curtailing the number of customers. This was action directed at the employer himself. Moreover, it could not possibly be thought that the picketing of the warehouses through which plaintiff was supplied was directed at plaintiff's employees. They did not work at these

warehouses; it was an attempt at secondary boycott for the purpose of driving plaintiff out of business. The motivation remained the same after the picket lines were withdrawn from the warehouses, which occurred when the union was evidently advised that the secondary-boycott procedure was illegal. After the pickets were withdrawn from the warehouses, lookouts were maintained there and continued until the trial. These lookouts warned away all drivers carrying plaintiff's merchandise, which effectively prevented plaintiff's use of the warehouses. Discontinuance of those picket lines averted interference with other business of the warehouses than with plaintiff, but the lookout activity was clearly aimed at injuring plaintiff rather than at persuading his employees inasmuch as it was conducted away from plaintiff's premises, and had no relation to plaintiff's employees, except as it might instill fear into them that plaintiff would be driven out of business and that the union might prevent their employment elsewhere. As was said in *Haber & Fink, Inc., v. " Jones "* (277 App. Div. 176, 182–183), the union activity " directly affects, and is intended to affect, plaintiff's business, which is not to be justified in this instance by a pretext that it is done to convince plaintiff's employees. If the employees are to be solicited, it must be done in some manner which does not result in the coercion of plaintiff." Invoking the sanctions involved in picketing is more than free speech; it is concerted action instituting a boycott. It is more than merely publicizing the fact that these employees have not joined a union. Picketing must have an object. The avowed object in this instance was to disrupt plaintiff's business and to prevent customers from patronizing plaintiff's store. If the signs said, instead, that customers and suppliers were not asked to boycott plaintiff's store but were invited to urge plaintiff's employees to join the union, then it might be said that the picketing was directed at the employees. The fact that signs reading that way would only be ridiculed by the union illustrates that the true object is to injure the business of the employer. " The right to carry on business — be it called liberty or property — has value. To interfere with this right without just cause is unlawful. The fact that the injury was inflicted by a strike is sometimes a justification. But a strike may be illegal because of its purpose, however orderly the manner in which it is conducted." (*Dorchy*

v. *Kansas,* 272 U. S. 306, 311, per Brandeis, J.) That statement is equally true respecting this situation. The following statement in the opinion of this court in *Opera on Tour, Inc.,* v. *Weber* (285 N. Y. 348, 355) is relevant here: " If on the other hand the labor objective here sought is illegal and not a lawful labor objective, since it has no reasonable connection with wages, hours, health, safety, the right of collective bargaining, or any other condition of employment or for the protection of labor from abuses, then there is no immunity for injury inflicted by a labor union. For such activities labor is not free from legal responsibility. ' * * * *prima facie,* the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law * * * requires a justification if the defendant is to escape. * * * ' (Mr. Justice Holmes in *Aikens* v. *Wisconsin,* 195 U. S. 194, 204.) " (See, also, *Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79.)

If this were a labor dispute, involving wages, hours or working conditions, the economic pressure brought to bear upon the employer would be lawful, as a proper step in collective bargaining. It would be within the employer's power to increase wages, shorten hours or improve working conditions, but under the circumstances presented here, what can the employer legally do? Recourse to the Labor Relations Board has been denied to him. The only thing which he could do in order to alleviate the economic pressure and save his business would be to compel his employees to join this union. That, as the union's own business agent admits, would constitute an unfair labor practice and involve him in a violation of the State Labor Relations Act. The cases clearly hold to that effect. (*Goodwins, Inc.,* v. *Hagedorn,* 303 N. Y. 300, *supra; Haber & Fink, Inc.,* v. " *Jones* ", 277 App. Div. 176, *supra; Chic Maid Hat Mfg. Co.* v. *Korba,* 281 App. Div. 1004; *Metropolis Country Club* v. *Lewis,* 202 Misc. 624, affd. 280 App. Div. 816; *Building Service Union* v. *Gazzam,* 339 U. S. 532, *supra; Bean* v. *Local Union No. 698, Retail Clerks Union,* 94 Ohio App. 361; *Way Baking Co.* v. *Teamsters & Truck Drivers Local 164, A. F. of L.,* 335 Mich. 478, certiorari denied 345 U. S. 957; *Klibanoff* v. *Tri-Cities Retail Clerks' Union,* 258 Ala. 479; *Voeltz* v. *Bakery & Confectionery Workers,* 233 P. 2d 624 [Calif. Dist. Ct. App., 1951], affd. 40 Cal. 2d 382; *Bitzer Motor Co.* v. *Teamsters, Local 604,* 349 Ill. App. 283; *Katz Drug Co.* v. *Kavner,* 249

S. W. 2d 166 [Mo. Sup. Ct., 1952]; *Wisconsin Employment Relations Bd. v. Retail Clerks,* 264 Wis. 189; *Hotel & Restaurant Employees Union v. Lambert,* 258 S. W. 2d 694 [Ky. Ct. App., 1953]; *Hayes Freight Lines v. Teamsters Union,* 33 LRRM 2671 [Tenn. Ct. App., 1954]; *S. & H. Grossinger, Inc., v. Burke,* 124 N. Y. S. 2d 40; *Selton Service v. Dioguardi,* 116 N. Y. S. 2d 36; *House of Styles, Inc., v. Doe,* 130 N. Y. S. 2d 45; *Tarrytown Road Restaurant Co. v. Hotel, Restaurant & Beverage Dispensers Union,* 115 N. Y. S. 2d 626; *Plastic Calendering Corp. v. Spilberg,* 121 N. Y. S. 2d 297; *Saperstein v. Rich,* 202 Misc. 923; *Gallespie Constr. Co. v. Hod Carriers,* 32 LRRM 2383 [Fla. Cir. Ct., 1953]; *Woodard v. Collier,* 210 Ga. 239; *Huff Truck Lines, Inc., v. Truck Drivers', Local 270,* 30 LRRM 2571 [La. Civ. Dist. Ct., Orleans Parish, 1952]; *Wischhusen v. Griffin,* 32 LRRM 2426 [Md. Cir. Ct., 1953]; *Hall Steel Co. v. Teamsters,* 31 LRRM 2645 [Mich. Cir. Ct., 1952]; *Cordey China Co. v. United Mine Workers, Dist. 50,* 25 N. J. Super. 514; *Couris v. Waiters Union,* 34 LRRM 2246 [Pa. Ct. Common Pleas, 1954]; *Lotmar Corp. v. Norton,* 117 N. Y. S. 2d 607; *Bon-Flo Taxi Corp. v. Norton,* 118 N. Y. S. 2d 249; *Cornell Beverages, Inc., v. Engar,* N. Y. L. J., Dec. 9, 1953, p. 1389, col. 5; *Kleet v. O'Rourke,* 124 N. Y. S. 2d 603; *Anchorage, Inc., v. Waiters & Waitresses Union Local 301,* 25 Labor Cases, 85773, 34 LRRM 2012 [Pa. Ct. Common Pleas, 1954]; *Matter of Kappel v. Local 71, Qualified & Misc. Workers,* 13 S. L. R. B. No. 116; *Irving Subway Grating Co. v. Silverman,* N. Y. L. J., Oct. 1, 1953, p. 614, col. 7; *Fireproof Products Co. v. Silverman,* 32 LRRM 2729 [Sup. Ct., N. Y. County, Sept. 28, 1953, EDER, J.]; *Amazon v. Local 178, Hotel & Restaurant Beverage Dispensers Ind. Union,* N. Y. L. J., March 17, 1953, p. 889, col. 3). In all of those cases, as well as in others, peaceful picketing was considered to be for an unlawful labor objective, and therefore subject to injunction, if it was conducted for the purpose of compelling the employer to coerce employees in violation of the freedom of choice in joining a union or in union representation guaranteed to them by the Federal or State Labor Relations Acts.

While the law permitted the employer to exert such pressure, organizational picketing was lawful. It is not necessary to decide in this case whether there may be some circumstances

under which organizational picketing is still lawful, but in no event can the law reasonably be construed as allowing an employer's business to be injured or destroyed when there is nothing which he can do to alleviate the economic pressure except by violating the law.

Another point is made which is said to distinguish this case from *Goodwins, Inc., v. Hagedorn* (303 N. Y. 300, *supra*) based on testimony of one of defendants' business agents, Edgar M. Wortman, that plaintiff told him in the presence of his employees that they were not going to sign up for the reason that if they did so they would no longer work in his store. Plaintiff denied that he said this, and there is no finding of fact that he did say it. If he did so, it would have been an unfair labor practice concerning which the union would at once have lodged a complaint with the Labor Relations Board. Three years have elapsed, but no such complaint has been made. No finding that such an incident occurred was even made by the trial court, when the complaint was dismissed. Neither the trial court nor the Appellate Division found that plaintiff made any threats of this nature to his employees. The trial court did find that certain of plaintiff's employees revealed a friendly attitude toward becoming members of this union but expressed a fear that their jobs would be jeopardized. That is not a finding that plaintiff made such threats. It may have been simply a polite way of telling the business agent that they did not choose to join his union. In any event, this finding was reversed by the Appellate Division and no longer remains in the record. There is not and never has been any finding that plaintiff, in fact, did threaten to discharge any of his employees if they joined this union, even by the trial court which decided in favor of the union. It is incorrect to state that the employer does not deny having done this. He testified: "Q. Mr. Wood, did you ever consult with your employees as to whether or not they should be members of Local 122? A. No, I never did." This testimony by plaintiff is a positive denial that he ever told his employees that they were not to become members of defendant union. Without making a new finding on conflicting evidence, which we lack jurisdiction to do, the decision of this court cannot be based on that ground. Even if the employer had been guilty of an unfair labor practice by threatening discharge if these

employees joined the union, the State Labor Relations Board would have had exclusive jurisdiction over such an unfair labor practice (Labor Law, §§ 704–706). If such a charge had been made to the labor board and sustained, the board was empowered to impose effective sanctions to redress the wrong. The Labor Relations Board could take appropriate steps to prevent the employer from carrying out any threat to discharge his employees for such a cause, and remove any fear of that nature from their minds. Upon the other hand, forcing an employer to coerce his employees into joining a union is not a legal sanction to redress an unfair labor practice.

The injunction could not be sustained and was not granted by the Appellate Division merely for the reason that the picketing was conducted by strangers. It may well be that the union has an interest in having union conditions prevail generally throughout this branch of business (cf. *May's Furs & Ready-to-Wear, Inc.*, v. *Bauer*, 282 N. Y. 331, *supra*; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260, 263, *supra*). Nevertheless, the union can accomplish that result only by methods permitted by law, and not by pressurizing an employer to engage in an unfair labor practice forbidden by the Labor Relations Acts.

The judgment appealed from should be affirmed, with costs.

DESMOND, J., concurs with DYE, J., in a separate opinion; FROESSEL, J., concurs with DYE, J.; FULD, J., concurs for reversal in a separate opinion; VAN VOORHIS, J., dissents in an opinion in which LEWIS, Ch. J., and CONWAY, J., concur.

Judgment reversed, etc.