Mario Pittoni, J.
The plaintiff, the owner of a retail wine and liquor store in Great Neck, Long Island, seeks a permanent injunction to restrain the defendant union, its members, agents and employees from picketing and similar activities in the area of his store.
Before we proceed further, let us state the hornbook law — sometimes overlooked in this field saturated with economic emotionalism — that the legal principles and standards for the trial courts are laid down by the Legislatures and the higher appellate courts. In the present case the key authorities are section 876-a of the Civil Practice Act; the Wood v. O'Grady case (307 N. Y. 532) decided by the New York Court of Appeals, and other pronouncements by the New York Court of Appeals and the United States Supreme Court.
Section 876-a of the Civil Practice Act declares as a matter of State policy that injunctions may not issue “ in any case involving or growing out of a labor dispute” except after a *196 hearing and after a finding of fact ‘ ‘ that unlawful acts have * * * been threatened or committed ’ ’ which ‘ ‘ will be executed ” causing “ substantial and irreparable injury to the complainant’s property”. Even then, the restraint must not interfere with certain recognized rights, particularly the publication of the facts “ involved in, any dispute, whether by advertising, speaking, picketing, patrolling any public street or any place where any person or'persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace; ” (emphasis added). The Legislature defined a labor dispute as one between ‘ ‘ persons who are engaged in the same industry, trade, craft or occupation ” which “ includes any controversy concerning terms and conditions of * * * representation * * * or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.”
Protected by this statute is 1 ‘ stranger ’ ’ organizational picketing (Wood v. O’Grady, 807 N. Y. 532, supra).
Briefly stated, the evidence establishes the plaintiff as the sole licensee and proprietor of a retail wine and liquor store located at 21 North Station Plaza, Great Neck, Nassau County, N. Y. There he employs a store manager and two other sales clerks.
The defendant union represents, as bargaining agent, wine and liquor store clerks. However, it is conceded now, and was conceded before the State Labor Relations Board at the February, 1958 hearing, that the defendant union is not and was not the bargaining representative of the plaintiff’s employees. It is also conceded that no contractual agreement exists, nor has any ever existed, between the plaintiff and the defendant union concerning representation of plaintiff’s employees.
Starting with the Summer of 1956, A1 Schultz, executive vice-president of the defendant union, visited the plaintiff’s store for the purpose of speaking to the employees concerning union membership, its benefits, advantages, etc. Thereafter, A1 Schultz repeated his visits to the store on at least three other occasions during 1956 and 1957. On each of these visits he spoke at length with each of the employees concerning the benefits and advantages of union membership.
In January, 1958 when again told by the employees that they were not interested in joining the union A1 Schultz told them that he would have to place pickets in front of the store. The plaintiff’s employees stated at the trial that he told the store *197 manager, William Breen, that he wanted to see the plaintiff, and when told that the plaintiff was in Florida, he insisted that Mr. Breen communicate with the plaintiff for the purpose of signing a contract with the union or be picketed.
On February 3, 1958, A1 Schultz came back to the store and again had some discussions with the employees. Late that same afternoon picketing of the store was begun. Again there is a difference between plaintiff’s witnesses and A1 Schultz as to what was said preliminary to the picketing. According to Mr. Breen and two other plaintiff witnesses, A1 Schultz ordered picketing only after Mr. Breen said that he had not communicated with the plaintiff regarding a union contract. A1 Schultz denied this part of the conversation and said that he ordered picketing only after he finally failed to convince Mr. Breen and the other employees to join his union. It is important to note that on February 26, 1958, at the State Labor Relations Board hearing, Mr. Breen was asked by the trial examiner, 1 ‘ During the course of these conversations that you had with Mr. Schultz, was anything said about signing a contract? The Witness: No Sir.” And to a question by Mr. Bergman, plaintiff’s attorney at the board hearing: “ Q. Well, did he give any reason for picketing the store? A. Well, unless we joined up.” This testimony was given only 23 days after the conversation in issue. Then too, no contract blank or form was given to anyone to submit to the plaintiff; nor was any such document seen by the employees. It should also be noted that the plaintiff employer could not sign any such contract unless his employees first joined the union. Under the circumstances it is difficult for the court to find these facts to be as contended by the plaintiff. He has failed to sustain his burden of proof on this issue; and the court finds that the motivating factor for the picketing was the failure of the employees to join the union.
Be that as it may, late that same afternoon of February 3, 1958, one or two pickets began walking to and fro in front of the plaintiff’s store with placards carrying legends: “ The employees of this store are non-union. Please do not patronize this non-union store. Help us maintain decent American standards and living conditions in the liquor industry. I am a member of the Wine and Liquor Store Employees Union, Local 122 * * * AFL-CIO.”
There was testimony on behalf of the plaintiff to establish certain activities by the pickets which the plaintiff contends were unlawful.
Plaintiff’s witnesses told how on many occasions the pickets were in the vicinity of the store without picket signs in a *198 luncheonette in the nearby railroad station or a nearby shoe store; that they came out when they saw liquor delivery trucks in the vicinity of the store and talked to the drivers. The pickets admitted this, but said they went into the store and luncheonette on a number of occasions because of the cold and inclement weather. What was said between picket and driver on most of these occasions was not stated. It was developed that on various occasions the drivers refused to deliver when they learned the store was being picketed.
There is testimony by several of plaintiff’s witnesses that on one occasion A1 Schultz did approach a Mason Burrows liquor delivery truck and was heard to say, ‘ ‘ Strike there. ’ ’ What else was said was not heard. If the statement was made that a strike was in progress at the plaintiff’s store when in truth and in fact there was not, that would be an unfair, false and illegal representation of fact unprotected by section 876-a of the Civil Practice Act. But the statement testified to, out of context, may be suspicious but does not constitute legal evidence, especially in the face of a denial. Factual conclusions may not be arrived at solely on the basis of suspicious circumstances or conjecture.
There was testimony on behalf of the plaintiff that on one occasion A1 Schultz picketed in such a way as to prevent the ingress of a prospective woman customer into the store, and that she left without entering after a futile attempt to get by him. Picketing with such a purpose is of course illegal. The freedom and right of free speech protected by section 876-a of the Civil Practice Act and by constitutional decisions do not permit interference with the freedom and rights of others, including customers. Pickets must bé extremely careful not to interfere, intentionally or unintentionally, with the rights of others. However, any such interference or intention was denied by A1 Schultz, and the woman was not produced at the trial. Again all we have as a basis for fact is evidence of suspicious circumstances and not legally sufficient evidence.
The plaintiff’s attempt to show financial loss due to the picketing and conversations with drivers of liquor delivery trucks has also fallen short of legal proof. Some testimony, subject to connection, was given to show the difference between sales for the same months in the years 1957 and 1958. But this difference, unconnected by any subsequent evidence to the picketing and the talks with delivery truck drivers, could be due to so many factors, including a change of store location consummated between the two periods involved. Anyway, the *199 plaintiff did not press this point at the trial and gave it little or no attention in his brief.
The plaintiff’s witnesses also gave testimony that because of the picketing it was necessary to have many deliveries from wholesalers made to a joint retailers’ warehouse in Westbury, Long Island, and to have the merchandise brought from there to his store.
But all the activities and inconveniences complained of come within the purview of Wood v. O’Grady (307 N. Y. 532, supra). The court there said:
“As we have already said, the evidence convincingly establishes that at no time did the union claim to this employer or any one else for that matter — that it collectively represented his workers and at no time did it demand a collective contract for the very good reason that none of his employees had joined their union and none were members at that time ” (p. 539).
“ To justify the contention that the picketing was in fact directed against him, the employer adduced testimony to show that wholesale deliveries of merchandise to his store were cut off because their truck drivers refused to cross the picket line with the result that the employer had to get his merchandise from the wholesaler or warehouse himself which, in any view, amounts to no more than personal inconvenience, for it was readily admitted that at all times the shelves in his store were ‘ loaded ’. Furthermore, no proof was offered showing that the employer’s customers were in any way or at any time intimidated, molested or interfered with, nor did the employer attempt to prove any loss of patronage or business profits. Such showing fails to establish the 1 substantial and irreparable injury to complainant’s property ’ essential to justify the issuance of an injunction” (p. 537).
“ The long history of controversial labor relations in this State is replete with instances of inconvenience to the employer, but it does not follow that at this late date such a consequence without more can be labeled ‘ an unlawful objective ’.
“As we view this record, the incidents complained of do not constitute an unlawful objective but at most amount to no more than the consequences frequently accompanying peaceful picketing in a labor dispute ” (p. 536).
Thus, viewing the whole record, the picketing objective in this case was not recognitional, which would be unlawful, but organizational, which is lawful.
Had some of the incidents complained of, i.e., the mentioning of a strike at the plaintiff’s store to a delivery truck driver, the *200 impeding of a customer’s ingress to the plaintiff’s store, etc. been legally proved an injunction would still not be justified. Prior isolated illegal or improper acts would not necessarily cause a forfeiture of the constitutional right of free speech involved in peaceful picketing. (See La Manna v. O’Grady, 278 App. Div. 77.)
The Benedetto v. O’Grady case (14 Misc 2d 46, Christ, J.) does not apply. There the court found a clear case of coercion upon the employer, coupled with a firm demand that the employer sign a union contract to avoid picketing, and also found certain fraudulent and deceptive practices. The picketing objective there was thus clearly recognitional and illegal.
Furthermore, in this present equity action which involves a “ labor dispute ” there is no legal proof of damage caused by this peaceful picketing. On this ground alone the injunction should be denied. (Kraus v. Bergman, 2 N Y 2d 155,157; Wood v. O’Grady, 307 N. Y. 532, 541, supra; Kane v. Walsh, 295 N. Y. 198.)
Thus, this case involves legal, peaceful, organizational picketing by a union whose primary objective was to persuade the nonunion employees of the plaintiff’s store to join the defendant union; it comes within the permissive confines of section 876-a of the Civil Practice Act and Wood v. O’Grady (307 N. Y. 532, supra).
The injunction is denied and the complaint is dismissed, without costs.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.