William B. Lawless, J.
Plaintiff moves for a temporary injunction restraining defendants and their agents from picketing restaurants operated by the plaintiff at 145 Franklin Street and 38 Swan Street, Buffalo, New York, during the pendency of an action brought by plaintiff against defendants for a permanent injunction ag’ainst picketing and for money damages.
It is undisputed that plaintiff is the owner and operator of two restaurants located in Buffalo, New York. Defendants’ affidavit alleges that the majority of plaintiff’s employees are members of locals affiliated with the Local Joint and Executive Board of Hotel and Restaurant Employees’ Union. It is agreed that defendant local has never had a written contract with the plaintiff employer.
Following plaintiff’s dismissal of one John G-rieco, a bartender and member of defendant union, defendant Carióla, acting as agent for Grieco, requested that plaintiff reinstate him but plaintiff refused, claiming that his employment was terminated because Grieco failed to be punctual in his working hours. As the result of conversations between plaintiff and defendant, defendant demanded that plaintiff sign a written contract covering the terms and conditions of employment of its union members employed by plaintiff. When plaintiff refused to sign the contract submitted, pickets were placed outside each of plaintiff’s restaurants. The pickets carried signs which *1018 stated: “ This establishment does not have a contract with the Joint Board of the Hotel and Restaurant Employees and Bartenders International Union AFL-CIO
It is conceded that the picketing has been peaceful in all respects and it is conceded that the picket signs state a true fact.
Plaintiff seeks a temporary injunction on the ground that the union does not seek a lawful objective; that the only meaning behind the picket line is to coerce the plaintiff employer to sign a contract with the defendant union. Plaintiff argues that injunctive relief is not barred by section 876-a of the Civil Practice Act.
Defendant union argues that the existing controversy involves a labor dispute for a lawful labor objective and as such the provisions of section 876-a of the Civil Practice Act must be complied with. The union argues that the term 1 ‘ Labor Dispute ” as set forth in section 876-a (subd. 10, par. [c]) defines a labor dispute to include the controversy existing in this case. Defendant union submitted the affidavit of its president asserting that it represented the majority of the plaintiff’s employees. This assertion has not been disputed by the plaintiff in his affidavit.
The State of New York adopted in 1935 section 876-a of the Civil Practice Act as State legislation akin to the Federal Norris-La Guardia Act and it is keyed to certain other legislation, notably the National Labor Relations Act of July 5, 1935 and the amendatory Labor Management Relations Act (TaftHartley Law) (U. S. Code, tit. 29, §§ 141-197) of June 23, 1947. Prior to 1935 there were no particular restrictions on the issuance of such injunctions by the courts of the State of New York, except as certain decisions of the Supreme Court of the United States had brought forth the concept that picketing by labor unions could be within the constitutional guarantee of right of free speech.
Section 876-a of the Civil Practice Act introduced by chapter 477 of the Laws of 1935 was expressly intended, as a matter of State policy, to obviate injunctions in labor dispute cases without due notice and full hearings, and thus to prevent the issuance of injunctions in such cases upon affidavits with danger of irreparable injury to the party enjoined. However, it is apparent from the language of section 876-a that the effect of the legislation is considerably more far-reaching than that. In essence, it is a negation of jurisdiction to issue injunctions either temporary or permanent “ involving or growing out of a labor dispute,” except after the filing of a verified complaint and bill of particulars, setting forth names and details, and a full hearing *1019 oil testimony in open court, as the result of which the court or Judge makes certain preliminary findings of fact; and each of such facts can he found the scope of the injunction issuable is specifically limited by a further set of provisions, and it can only issue for a limited period.
Since the adoption of section 876-a, the decisions indicate that relatively few injunctions have been granted under it or through compliance with its terms.
The case law deals mainly with the applicability of the statute. If it is held to apply, that usually defeats the attempt to enjoin, but if the subject matter is determined not to be a 1 ‘ labor dispute,” the plaintiff can obtain an injunction, if entitled to one, under the exigencies of the situation, without any further regard to section 876-a.
The critical question, then, is whether or not a ‘£ labor dispute 5 ’ exists within the purview of the statute.
The term £ £ Labor Dispute ’ ’ is defined as follows: ££ c. The term £ labor dispute ’ includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.” (Civ. Prac. Act, § 876-a, subd. 10, par. [c].) This court finds that the controversy before it constitutes a £ 6 labor dispute” because the disagreement arises out of the terms and conditions of employment in that it involves the signing of a proposed contract which covers recognition, hiring, seniority, discharge, conditions of employment, uniforms, meals, vacations, work week, fines and penalties, wage scales, and other provisions usually included in such agreements. We find that a demand for a contract is not an unlawful objective. In Wood v. O’Grady (307 N. Y. 532 [1954]) the Court of Appeals again permitted peaceful picketing where it was found that the incidents complained of did not constitute an unlawful objective but at most amounted to no more than the consequences frequently accompanying peaceful picketing in a labor dispute. Therein the picket line consisted of one or two pickets, stationed in front of the employer’s store carrying a placard bearing the legend: “ The employees of this store are non-union. Please do not patronize this non-union store. We are members of the American Federation of Labor, No. 122 of A. F. L.” The truthfulness of this legend was not challenged and the record was barren of any instance of violence or dis *1020 order on the part of the picket. The court stated at page 540 of the opinion: “The test of illegality, as we see it, is not whether any particular picketing has ‘ gone on long enough ’ but rather whether such picketing is being lawfully conducted in the furtherance of union interests in a statutory labor dispute.”
Admittedly, an injunction would lie in this case if it were demonstrated that the picketing was organized to promote ‘1 an unlawful labor objective ” (Goodwins, Inc., v. Hagedorn, 303 N. Y. 300) but in this case the representatives of the employees are seeking to reduce to a contract the basic terms of their employment. The employer is unwilling to execute the contract and the result is that a “ labor dispute ” has arisen within the meaning of the statute.
In Opera on Tour v. Weber (285 N. Y. 348) the Court of Appeals considered whether the leaders of defendant unions were engaged in promoting a lawful labor objective when the Musicians’ Union induced the Stage Hands’ Union to join in a combination to thwart an enterprise which would replace musicians with mechanical devices. The court stated at page 355 of the opinion as follows: “ If the acts of these unions have any reasonable connection with wages, hours of employment, health, safety, the right of collective bargaining, or any other condition of employment or for the protection from labor abuses, then the acts are justified. (National Protection Association v. Cumming, 170 N. Y. 315; Bossert v. Dhuy, 221 N. Y. 342; J. H. & S. Theatres, Inc., v. Fay, 260 N. Y. 315; Goldfinger v. Feintuch, 276 N. Y. 281; May’s Furs & Ready-to-Wear, Inc., v. Bauer, 282 N. Y. 331; Baillis v. Fuchs, 283 N. Y. 133.) If on the other hand the labor objective here sought is illegal and not a lawful labor objective, since it has no reasonable connection with wages, hours, health, safety, the right of collective bargaining,' or any other condition of employment or for the protection of labor from abuses, then there is no immunity for injury inflicted by a labor union. For such activities labor is not free from legal responsibility.”
To this court it appears that nothing could be more vital in the employer-employee relationship than a contract which summarizes the terms and conditions of employment. That is the issue which created the “ labor dispute ” in this case.
The application for temporary injunction is denied .on the terms and conditions that the picketing remain peaceful; that not more than two pickets be used at each of the restaurants in question and on condition that the signs carried continue to state true facts. Enter order accordingly.