Donald S. Tayloe, J.
Plaintiff, a domestic corporation engaged in the retail and wholesale grocery business in the city of Albany, sues the defendants individually and as officers of an unincorporated labor union for a permanent injunction restraining certain picketing of its premises and for money damages. It moves for pendente lite injunctive relief.
*344 It is undisputed that none of the plaintiff’s six warehouse employees is a member of the defendant union or was ever importuned to join it. There is no strike and no certified bargaining representative of plaintiff’s employees. No claim is made that the legend which the placards contained was misleading or that the picketing was other than peaceful. Its consequential effect on plaintiff’s warehousing operations is also uncontradicted.
The plaintiff contends that the establishment and maintenance of the picket line in front of its place of business is intended solely to coerce it through economic pressure to recognize the union as the uncertified collective bargaining agent of its employees and to compel its execution of a union contract to that effect. In this State such picketing, even though peaceful, constitutes an unlawful labor objective which may be enjoined. (Goodwins, Inc. v. Hagedorn, 303 N. Y. 300, 305, motion for reargument denied 303 N. Y. 673; Wood v. O’Grady, 307 N. Y. 532, motions for reargument denied 308 N. Y. 757, 308 N. Y. 859, cert. denied 349 U. S. 939; Plumbers Union v. Graham, 345 U. S. 192, 201; Building Service Union v. Gazzam, 339 U. S. 532; Teamsters Union v. Hanke, 339 U. S. 470.)
The defendants claim that the picketing was conducted solely for the legitimate purpose of persuading the employees of the plaintiff to become members of the union. Such is not subject to judicial restraint. (May’s Furs & Ready-To-Wear v. Bauer, 282 N. Y. 331, motion for reargument denied 282 N. Y. 804; Exchange Bakery & Restaurant v. Rifkin, 245 N. Y. 260, motion for reargument denied 245 N. Y. 651; Wood v. O’Grady, supra.)
The supporting affidavit of the plaintiff’s president states: “ On or about January 23, 1957, Mr. Bay and one Fred Ostran-der came to Trading Port, Inc.’s offices. Identifying themselves as ‘from 294 ’ they said they’d like to talk to me. I showed them into my office where the following conversation ensued.' Mr. Bay said, ‘ You must join the union ’. I told him I didn’t like the ‘ must ’. He said, ‘ We’ll leave the ‘ must ’ out but you’ve got to join the union ’. I told Mr. Bay, as far as his union was concerned, the company would abide by the wishes of its employees; and I suggested an election be held to determine their choice. Mr. Bay' said there would be no election, but the union would picket the company unless the company acceded to the union’s demand and ‘ joined up ’. Leaving my office, Mr. Bay repeated this picketing threat, blatantly suggesting that therefore I had better see my lawyer. * * * On the morning picketing commenced (January 28), I met Mr. Ostrander in front of the warehouse. He said, ‘ Why don’t you sign up, then *345 you won’t get hurt?’. He showed me a copy of a contract, on information and belief, a proposed contract (since the space for insertion of an employer’s name was blank). The proposed contract did contain hourly wage rates, including future wage rates. Mr. Ostrander said that if I would sign it, then I would have no trouble. I told him I wanted an election- — the American way. He said the union wasn’t interested in any election. January 28, in the afternoon, Mr. Ostrander and I had another conversation. He then said, ‘ Why don’t you sign up because tomorrow we’re going to picket your stores ’.”
The answering affidavit of the treasurer of the union asserts: “ I did call on Mr. Tabachneck at his office on or about January 23, 1957. I said to him in words or substance: ‘We have organized in our Union, the Grand Union and A. & P. and many other Grocery Warehouses. It is our intention to organize your Warehouse operation in line with the conditions covered by our Union contract, in the other Grocery Warehouses ’. I explained to him that his operation was below the Union standard and that the employees do not enjoy the same benefits afforded warehouse and other employees in the Grocery Warehouses organized by us.’ I made no demand on him for an agreement nor did I demand that ‘ You must join the Union ’. This, of course, is ridiculous because Mr. Tabachneck is not entitled to join the Union since he is an employer and boss. I told him that it is our custom and practice to establish organizational picket lines where we are carrying on an organizational campaign. That is the only reference which was made to a picket line at this conference and, this is the only conference I had with him.”
The affidavits of the other union representative allege: “I have read the affidavit of Edmund J. Bay. The matters set forth in his affidavit are true and correct, in all respects as he set forth, including the conversations had with Isadore Tabach-neck. Likewise, the statements made by Edmund J. Bay to Mr. Tabachneck are, in all respects, true as set forth ’ ’ and “ Throughout all of my dealings with Mr. Tabachneck I never demanded that he sign an agreement or that I would make trouble for him or anything of that kind. My only discussion with him revolved around the fact that the employees of many other warehouses in the area were organized and particularly grocery warehouses and that he, Tabachneck, was not paying the same rate of pay nor giving the employees the same privileges and benefits enjoyed by other employees doing the same or similar kind of work. There was no argument and there was no heat in our discussion. Our talk was on the most business like basis. ’ ’
*346 In the indicated state of this record my conclusion is that the real purpose of the picket line is to subject the plaintiff to economic pressure to compel its recognition of the union as the collective bargaining representative of its employees without their knowledge or assent and to induce it to execute a union, contract. Since this objective is not a lawful one, this controversy is not a labor dispute within the contemplation of section 876-a of the Civil Practice Act. (Opera on Tour v. Weber, 285 N. Y. 348, 355, motion for reargument denied 286 N. Y. 565, cert. denied 314 U. S. 615, motion for reargument denied 287 N. Y. 649, motion for rehearing denied 314 U. S. 716; Union News Co. v. Davis, 201 Misc. 1062; Selton Service v. Dioguardi, 116 N. Y. S. 2d 36, 38; Wood v. O’Grady, supra; Goodwins, Inc. v. Hagedorn, supra.) The conduct of the defendant union which is demonstrated here has not been made an unfair labor practice under the Federal statute. Hence, this court’s jurisdiction has not been pre-empted. (Labor Management Relations Act [Taft-Hartley Act], U. S. Code, tit. 29, § 141 et seq.; Weber v. Anheuser-Busch, 348 U. S. 468; United Workers v. Laburnum Corp., 347 U. S. 656; Baylis v. Quinnonez, 286 App. Div. 1030, motion for leave to appeal to the Court of Appeals denied 286 App. Div. 1104; Meltex, Inc. v. Livingston, 208 Misc. 1033; Goodwins, Inc. v. Hagedorn, supra.)
The motion is granted with the proviso that the injunctive provisions of the order to be entered hereon shall terminate on July 1, 1957 unless the plaintiff files and serves an appropriate note of issue for the June, 1957 Trial Term in Albany County and moves at the opening thereof for a preference in pursuance of subdivision 3 of rule 151 of the Rules of Civil Practice and unless the plaintiff is ready to proceed to trial at a time fixed by the Justice presiding at such Trial Term. (Flagler Hotel Operating Co. v. Starr, 3 A D 2d 625.)
Submit order accordingly.