Charles Lambiase, J.
This is an action in which the plaintiff demands judgment as follows:
‘ ‘ 1. That defendants, and each of them and each and every member thereof and all persons agreeing and combining with them, their respective officers, associates, confederates, employees, agents, representatives and servants, and all other persons whomsoever, known or unknown, to whom notice hereof shall come, be perpetually enjoined and commanded to restrain from:
“ (a) Maintaining pickets in front of, behind, or in the vicinity of the premises of the plaintiff’s place of business;
“ (b) From engaging in any and all unlawful acts and from interfering in any way with the plaintiff’s business or with anyone else connected with the plaintiff’s business;
“(c) In any manner, interfering, directly or indirectly, with the plaintiff, its respective officers, directors and employees;
“ (d) Creating a false impression that a labor dispute exists between the plaintiff the defendant Union and/or plaintiff’s employees;
“(e) Stating that the plaintiff’s employees are on strike or that the plaintiff is unfair to organized labor;
“(f) Forcing, coercing, intimidating or in any way exerting any pressure, economic or otherwise, on the plaintiff to recognize the defendant Union as the collective bargaining agent of the plaintiff’s employees.
‘ ‘ 2. For a temporary restraining order and preliminary injunction of the same tenor and effect to be issued during the pendency of this action.
“ 3. That the plaintiff recover of the defendants all their present and future damages to date of trial to be assessed by the order of the court.
‘1 4. That the plaintiff have such other and further relief as may be just and proper, together with costs and disbursements of this action. ’ ’
Under date of July 21, 1965, this court, Maceen, J., signed a show cause order returnable on July 26, 1965, at 9:45 in the forenoon of that day, ordering the defendant to show cause ‘1 why a preliminary injunction should not be granted herein enjoining the defendants, members of the defendant, its servants, agents and employees, and all other persons acting in conjunction with them, pursuant to Section 6301 of the Civil Practice Law and Bules and pending the determination of this action from engaging in any and all unlawful acts and from interfering in any way with the plaintiff’s business or with anyone else connected with the plaintiff’s business and from any and *757 all other acts or omissions as defined in the ‘ "Wherefore ’ clause of the plaintiff’s Complaint herein on the ground that plaintiff has demanded a permanent injunction, and said acts of the defendant if committed during the pendency of the action would produce injury to the plaintiff; ’ ’ and providing therein ‘ ‘ that pending the argument of this application and conditional upon plaintiff furnishing an undertaking in the amount of Five Hundred Dollars ($500.00), that defendants, and each of them and each and every member thereof and all persons agreeing and combining with them, their respective officers, associates, confederates, employees, agents, representatives and servants, and all other persons whomsoever, known or unknown, to Avhom notice hereof shall come, be enjoined and commanded to restrain from:
“ (a) Maintaining pickets in front of, behind, or in the vicinity of the premises of the plaintiff’s place of business;
“(b) From engaging in any and all unlawful acts and from interfering in any way with the plaintiff’s business or with anyone else connected with the plaintiff’s business;
“(c) In any manner, interfering, directly or indirectly, with the plaintiff, its respective officers, directors and employees;
“(d) Stating that the plaintiff’s employees are on strike or that the plaintiff is unfair to organized labor;
“(e) Forcing, coercing, intimidating or in any way exerting any pressure, economic or otherwise, on the plaintiff to recognize the defendant Union as the collective bargaining agent of the plaintiff’s employees.”
Thereafter and on the 29th day of July, 1965 this court, Easton, J., granted the aforesaid motion thus brought on by show cause, providing that “the injunctive provisions of the Order shall terminate on September 15, 1965, or sooner, if and when the defendants win an election ”; and providing that “ The plaintiff shall file and serve an appropriate note of issue for the September 1965 Trial Term in Monroe County within three days after issue is joined. Upon the filing of the note of issue this matter shall be given a preference for trial at the September 1965 Trial Term in Monroe County.” (47 Misc 2d 161, 164.)
Thereafter the matter came before us at the September Term of this court and was finally heard by us on the 17th and 20th days of September, 1965, and thereafter finally submitted to us for determination. By agreement of counsel, the status quo of the temporary injunction granted by Justice Easton has been maintained at all times and now is being maintained.
*758 Prior to the trial herein and as a result of pretrial conferences, the attorneys for the parties entered into a stipulation of facts which was offered into evidence by the court and received upon the trial. The following is admitted for the purpose of the trial of the issues raised by the pleadings herein:
The plaintiff is a proprietary nursing home providing nursing care for approximately 150 patients, many of whom are suffering from terminal illnesses and require continuous, careful and intense care on an aróund-the-clock basis. The plaintiff employs more than 100 men and women who are engaged as porters, maids, nurses’ aides, etc.
Defendant, Rochester Hospital Workers Organizing Committee, AFD-CIO, hereinafter called “ Committee ”, has always been and is a voluntary unincorporated labor association, and defendant, John Ditto, has at all times been the chairman and/or president of said Committee. The defendants have, for a period of several months, and since on or before March 1, 1965, been engaged in an effort to organize plaintiff’s employees. They have also been engaged in an effort to organize the dietary workers employed at plaintiff’s place of business regarding which workers there is a dispute as to their inclusion in the unit, the plaintiff contending that they should be included with its employees, and the defendants contending that they should be excluded as employees of Food Operations, Inc.
On the 4th day of June, 1965 defendant, John Ditto, sent a letter to the executive director of the plaintiff, one Eli Rudin, requesting that the defendants be recognized as the exclusive bargaining agent of the plaintiff’s employees. The plaintiff, claiming and believing that the defendant Committee did not represent a majority of its employees, did then deny and has thereafter and since denied such recognition to the defendants.
On or about the 11th day of June, 1965 the defendant Committee, through the defendant John Ditto, filed a petition for investigation and certification of representatives pursuant to section 705 of the New York State Dabor Relations Act (Dabor Daw, art. 20) with the New York State Dabor Relations Board requesting an election to be held by the latter to determine its representative status. An informal conference was held with the regional attorney for the New York State Dabor Relations Board by plaintiff and defendants on the 25th day of June, 1965. A formal hearing was held before the Trial Examiner of said Dabor Board on August 10, 1965, and as yet no decision herein has been handed down.
*759 This matter was brought before the National Labor Relations Board by the defendants, and said board dismissed the petition for an investigation and certification of the plaintiff and declined jurisdiction of the matter.
On the 21st day of July, 1965 defendants instituted a picket line at the two main entrances of the plaintiff’s place of business. Fourteen of plaintiff’s employees failed to report for work on that day; and 7 of plaintiff’s employees at one time or another during the course of the picketing joined said picket line. Plaintiff has and does employ approximately 100 persons as maids, porters, nurses’ aides, etc. There have been and are approximately 20 dietary employees employed at plaintiff’s place of business, reference to whom has been hereinbefore made, and inclusion in the unit being disputed as hereinbefore set forth. The picket line was instituted by the defendants in an attempt to compel plaintiff to recognize defendant as a representative of plaintiff’s employees. Concededly irreparable harm was being caused to plaintiff by the picket line, the sole issue being whether or not the picketing was lawful.
Plaintiff was informed on September 13, 1965 and does not dispute that the defendants, at some time in the past, provided the New York State Labor Relations Board with 66 authorization cards submitted to establish an interest by employees at plaintiff’s place of business in the defendants, and also some 17 cards in regard to the dietary workers. But plaintiff does not stipulate as to the contents of said cards, the fact that any employees signed such cards, the genuineness of any signatures thereon, the intent or understanding of any employee who may have signed such a card, nor the relevancy of the existence of such cards to the question involved in this proceeding. Neither of the defendants has filed any unfair labor practice charges with either the New York State Labor Relations Board or the National Labor Relations Board. All of the foregoing admitted matters are contained in the “ Stipulation of Facts ” (Exhibit 1) to which reference has hereinbefore been made.
Plaintiff contends that the establishment and maintenance of the picket line in front of its place of business is intended solely to coerce it through economic pressure to recognize the union as the uncertified collective bargaining agent of its employees and to compel the execution of a union contract to that effect. In this State such picketing, even though peaceful, constitutes an unlawful labor objective which may be enjoined. (Goodwins, Inc. v. Hagedorn, 303 N. Y. 300, 305, mot. for rearg. den. 303 N. Y. 673; Wood v. O'Grady, 307 N. Y. 532, *760 mot. for rearg. den. 308 N. Y. 757, 308 N. Y. 859, cert. den. 349 U. S. 939; Plumbers Union v. Graham, 345 U. S. 192, 201; Building Serv. Union v. Gazzam, 339 U. S. 532; Teamsters Union v. Hanke, 339 U. S. 470; Trading Port v. Robilotto, 8 Misc 2d 343, 344.)
Defendants concede that the picket line was instituted by defendants in an attempt to compel plaintiff to recognize them as the representative of plaintiff’s employees (Stipulation of Facts, Exhibit 1, No. 13). However, they maintain that all recognitional picketing is not unlawful, admitting that picketing which has for its purpose an unlawful objective is illegal. They assert that unless picketing is instituted for such illegal purpose, it should not be enjoined except under the conditions provided for in section 807 of the New York State Labor Law. Lastly, defendants claim that the picketing was conducted solely for a legitimate purpose and as such is not subject to judicial restraint. (May's Furs & Ready-To-Wear v. Bauer, 282 N. Y. 331, mot. for rearg. den. 282 N. Y. 804; Exchange Bakery & Rest. v. Rifkin, 245 N. Y. 260, mot. for rearg. den. 245 N. Y. 651; Wood v. O'Grady, supra; Trading Port v. Robilotto, supra.)
If the picketing herein has for its purpose an illegal and illegitimate object as contended by plaintiff, such picketing is enjoinable without regard to section 807 of the Labor Law. (Goodwins, Inc. v. Hagedorn, 303 N. Y. 300.)
If a “ labor dispute” be involved herein as contended by defendants, then the statutory definition thereof (Labor Law, art. 22-A, § 807) makes clear the intent of the Legislature to subject the injunction issued in cases “ involving or growing out of a labor dispute ” (subd. 1) to specific regulations deemed appropriate to the nature of such disputes; and it has in the same section (subd. 10, par. [c]), defined “labor dispute” as including “ any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.”
Plaintiff maintains that only if prior to the commencement of the picketing herein it had been presented with clear and convincing evidence that defendants’ picketing organization represented a majority of its employees can injunctive relief be denied, for, in that situation, plaintiff would have or should *761 have known that the defendants truly represented its employees and thus would have been under a duty to recognize and bargain with defendants. (Paterson Motors v. Snyder, 138 N. Y. S. 2d 84.)
It is defendants ’ position, on the other hand, that they represented a majority of plaintiff’s employees herein prior to and at the time of the picketing as shown by the employees’ signed authorization cards filed by defendants with the State Labor Relations Board, and that, while defendants have admitted that plaintiff believed that defendant Committee did not represent such majority (Stipulation of Facts No. 6, Exhibit No. 1), there is nothing contained in either such stipulation or the record which indicates that any of the employees at any time notified defendant Committee that they did not desire representation or that they wished to withdraw their aforesaid authorization cards. Thus there is also before us the question as to whether or not the evidence warrants a finding that the refusal of recognition was permissible under the circumstances herein. (Joy Silk Mills v. National Labor Relations Bd., 185 F. 2d 732, 741, cert. den. 341 U. S. 914.)
It is to be noted that subdivision 1 of section 705 of the Labor Law provides: ‘ ‘ Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes or by the majority of the employees voting in an election conducted pursuant to this section shall be the exclusive representatives of all the employees in the appropriate unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, that employees, directly or through representatives, shall have the right at any time to present grievances to their employer.”
It has been held that an employer may refuse recognition to a union when motivated by a good faith doubt as to that union’s majority status. (North Elec. Mfg. Co. v. N. L. R. B., 123 F. 2d 887 [C. A. 6th]; N. L. R. B. v. Chicago Apparatus Co., 116 F. 2d 753 [C. A. 7th]; Joy Silk Mills v. National Labor Relations Bd., 185 F. 2d 732, 741.) It is plaintiff’s contention that there exists such good faith doubt in this instance. Defendants contend to the contrary. The test used to determine good faith is primarily an objective one, although a subjective element is involved, that is, the intent or motive of the employer.
Concededly defendants must establish that they have been designated as the representatives herein by an uncoerced majority of plaintiff’s employees. Plaintiff was informed on September 13,1965 that the defendants “ at some time in the past, *762 provided the New York State Labor Relations Board with sixty-six authorization cards used to establish an interest by employees at Pavilion in the defendants, and also seventeen cards in regard to the dietary workers.” (Stipulation of Facts, No. 15, Exhibit No. 1.) Plaintiff, however, raises in said stipulation other questions with reference to said authorization cards which are therein more particularly detailed and have not been conceded.
Although it is undisputed that the defendants had carried on organizational efforts directed at plaintiff’s employees since March 1, 1965, there has been no satisfactory showing that on the 21st day "of July, 1965 when picketing began of plaintiff’s establishment, the defendants represented a majority of plaintiff’s then employees sought to be organized. The authorization cards were not produced, they being before the State Labor Relations Board at the time of the trial herein, but a card similar to the ones before the board is in evidence.
It is interesting to note that following plaintiff’s refusal to bargain with defendants, the defendants had one of two courses open to them to establish officially their status as bargaining agent. They could have filed unfair labor charges or instituted a representation petition. They chose the latter course; and it has not been made to appear that at any time up to the present have they filed charges against the plaintiff involving unfair labor practices. In our opinion defendants’ course in instituting such petition before the State Labor Relations Board is a fair and equitable procedure protecting both the interests of the plaintiff as an employer and those of its employees, and furthering the legislative policy of our Federal and State legislative bodies.
We have concluded that upon this record, which includes the stipulation of facts (herein Exhibit 1), defendants have not met the burden that they had been designated as bargaining agent by an uncoerced majority of plaintiff’s employees when the picket line was instituted.
Some question has been raised about the appropriateness of the unit of the proposed union organization, but it is a matter of general agreement that that question is not of any materiality at this time and thus we do not discuss it.
In the indicated state of the record and upon the findings of fact submitted by the plaintiff which we have marked as found and which we adopt and make a part of this memorandum decision (copy of which findings is attached hereto), our conclusion in the matter before us is that the real purpose of the picket line instituted by defendants at plaintiff’s establishment was to subject plaintiff to economic pressure to compel defendants’ *763 unwarranted recognition as the collective bargaining representative of plaintiff’s employees and to induce plaintiff to execute a union contract. Since this objective is not a lawful one, we conclude further that the controversy involved herein is not a labor dispute within the contemplation of section 807 of the Labor Law of the State of New York. (Opera on Tour v. Weber, 285 N. Y. 348, 355, mot. for rearg. den. 286 N. Y. 565, cert. den. 314 U. S. 615, mot. for rearg. den. 287 N. Y. 649, mot. for rehearing den. 314 U. S. 716; Union News Co. v. Davis, 201 Misc. 1062; Selton Serv. v. Dioguardi, 116 N. Y. S. 2d 36, 38; Wood v. O'Grady, supra; Goodwins, Inc. v. Hagedorn, supra; Trading Port v. Robilotto, 8 Misc 2d 343, 346.)
Judgment is rendered as demanded in the complaint, except as to paragraph (3) of the prayer for relief. Although irreparable damage has been found, it is not susceptible of proof with such definiteness, and it has not been thus proved herein as to entitle plaintiff to recover money damages. Therefore, as to this item of the prayer for relief, no money judgment is given.